IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.: |
| | § | |
| **Blue Duck Energy MVR, LLC** | § | 25-20131-BWO-11(V) |
| | § | |
| Debtor. | § | (Chapter 11, Subchapter V) |

## SMALL BUSINESS DEBTOR'S PLAN

This is the plan of reorganization in the small business chapter 11 case of Blue Duck Energy MVR, LLC. You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. You may wish to consult an attorney about your rights and your treatment under the Plan.

### SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan proposes to reorganize the Debtor. The Debtor proposes either to sell substantially all of its assets or to restructure the claim of its sole secured creditor and to repay its obligations to such creditor over a period of five (5) years at the prepetition contract rate of interest. The Debtor proposes to repay its unsecured creditors in full over a period of six (6) months or upon the sale of its assets, whichever occurs first.

### ARTICLE 1
### RELEVANT BACKGROUND AND
### FINANCIAL INFORMATION FOR DEBTOR

**1.1** **Nature of the Debtor's Business.**

The Debtor owns working interests in oil and gas wells in West Texas. Through a contract operator, the Debtor operates certain of those wells, and third-party operators operate the others. The Debtor also owns an interest in a natural gas gathering system, which a third party also operates. Either the Debtor will sell its assets, or if not then these operations generate net revenue sufficient to carry out the terms of this Plan.

**1.2** **History of Business Operations of the Debtor**

On December 28, 2021, the Debtor was established pursuant to that certain *Company Agreement* (the "MVR Company Agreement"). The MVR Company Agreement was signed by its initial member, Blue Duck Energy, Ltd. ("Blue Duck"). The Debtor is the operating subsidiary of Blue Duck. The majority of Blue Duck's assets are held at the Debtor's level. The Debtor continues to conduct, through its contract operator and other service providers, maintenance, repair, management, and operations of certain oil and gas wells in West Texas, mostly in Roberts County, Texas.

**1.3** **Legal Structure and Ownership.**

The Debtor is a Texas limited liability company and is a wholly owned subsidiary of Blue Duck, the Debtor's sole member. Blue Duck's ownership, and therefore the Debtor's ownership to a certain extent, is subject to an ongoing dispute in *JetTexas Oil, LLC et al. v. Stewart Hoge et al.*, Adv. No. 24-02006 (Bankr. N.D. Tex.).

**1.4** **Events Leading to the Filing of the Bankruptcy Case.**

On August 14, 2024, Blue Duck commenced a voluntary case under Chapter 11 of the Bankruptcy Code, thereby initiating bankruptcy case number 24-20224 (the "Blue Duck Case") due to ongoing litigation over a dispute regarding, *inter alia*, ownership interest percentages in Blue Duck. Around that time, that certain *Real Estate Lien Note* dated January 19, 2022, in the principal amount of $1,900,000.00 (the "Note"), executed by the Debtor and originally payable to Mesa Petroleum Partners LP and BP Operating Company LLC, together with the lien and security interest securing the Note created by that certain *Deed of Trust, Security Agreement, Financing Statement and Assignment of Production* of the same date from the Debtor to Robert L. Stillwell, Trustee for Mesa Petroleum Partners LP and BP Operating Company LLC, and recorded in Volume 367, Page 436, Official Public Records of Roberts County, Texas (the "Deed of Trust"), was assigned first to Montgomery Development, LLC and subsequently to MBP Roberts County, LLC (the "Noteholder"). By letter dated March 13, 2025, the Noteholder alleged that the Note had matured and that failure to repay all of the obligations on the alleged maturity date had caused an event of default. Despite efforts by the Debtor to work with the Noteholder to refinance and renew the Note, on May 13, 2025, a *Notice of Foreclosure* was posted along with the *Notice of Substitute Trustee's Sale* setting the Debtor's property and interests that secure the Note to be sold at foreclosure on June 3, 2025. In an effort to prevent irreparable harm to the Debtor's estate and the Debtor's creditors, the Debtor sought relief under the Bankruptcy Code. The Debtor also filed its bankruptcy case in order to investigate the circumstances surrounding the back-to-back assignments of the Note under unusual and suspicious circumstances, and to investigate and potentially recover pre-bankruptcy transfers of substantial amounts of money from the Debtor to or for the benefit of certain insiders.

**1.5** **Filing of the Debtor's Chapter 11 Case.**

On June 2, 2025, the Debtor filed a voluntary petition for relief under the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code" or "Bankruptcy Code"). The chapter 11, subchapter V case is pending in the Bankruptcy Court in the Northern District of Texas. The Debtor's schedules of assets and liabilities are available at docket numbers 28 and 39, and the Debtor's statement of financial affairs is available at docket number 31.

**1.6** **Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. All creditors are being paid in full under the Plan, either from a sale of the Debtor's assets or from the Debtor's cash flow. In a chapter 7 liquidation, creditors might be paid in full as well, but they might not. As of the filing of this Plan, the Debtor believes the value of its

assets exceeds the amount of its liabilities. Proceeding under chapter 7 would, however, present risks that are not present in chapter 11. Normally, a debtor stops operating in chapter 7. If the Debtor stopped operating its wells and stopped paying royalties, the underlying leases could lapse, which would negatively impact the value of the Debtor's assets. In that case, it is not clear the liquidation value of the Debtor's assets would still exceed the amount of the Debtor's liabilities. Furthermore, a chapter 7 liquidation involves the appointment of a trustee, whose fees and expenses are entitled to priority payment. There is therefore a risk of less-than-full payment in a hypothetical chapter 7 case, whereas the Plan provides for full payment based on continued, proven operations and future revenue.

**1.7    Feasibility Analysis.**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information as **Exhibit A**. These projections demonstrate that the Plan is feasible.

**1.8    Avoidable Transfers.**

The Debtor estimates that at least $778,188.03 may be realized from the recovery of fraudulent, preferential, or other avoidable transfers. While the results of litigation cannot be predicted with certainty, and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance, and other avoidance actions which the Debtor may file in this case:

| Recipient/ Beneficiary | Date | Amount |
|---|---|---|
| Stewart Hoge | 6/21/2024 | $18,260.20 |
| Stewart Hoge | 7/8/2024 | $37,604.34 |
| Stewart Hoge | 8/13/2024 | $24,745.57 |
| Stewart Hoge | 9/12/2024 | $51,672.87 |
| Stewart Hoge | 6/14/2023 | 120,328.46 |
| Stewart Hoge | 8/28/2023 | 40,667.50 |
| Stewart Hoge | 10/2/2023 | 27,088.90 |
| Stewart Hoge | 10/19/2023 | 23,857.62 |
| Stewart Hoge | 11/4/2023 | 53,656.30 |
| Stewart Hoge | 12/12/2023 | 39,043.06 |
| Stewart Hoge | 1/19/2024 | 78,207.71 |
| Stewart Hoge | 2/21/2024 | 87,384.53 |
| Stewart Hoge | 3/15/2024 | 64,596.94 |
| Stewart Hoge | 4/23/2024 | 68,218.70 |
| Stewart Hoge | 5/17/2024 | 42,855.33 |
| | **TOTAL** | **$778,188.03** |

These claims and causes of action will survive confirmation of the Plan, and following confirmation such claims and causes of action will vest in the Debtor, and the Debtor may pursue such claims and causes of action at any time, subject to the limitations set forth in 11 U.S.C. § 546.

# ARTICLE 2
# THE PLAN

This Plan under chapter 11, subchapter V of the Bankruptcy Code proposes to pay creditors of the Debtor in full, either from a sale of the Debtor's assets or from future income and cash on hand. Treatment of creditors' claims is determined by which class such claim belongs to. Claims have been classified below in accordance with section 1122 of the Code.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding allowed claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the allowed claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.

A class that is not impaired is deemed to accept the Plan and therefore is not entitled to vote. Generally speaking, a class of claims or interests in impaired unless, "with respect to each claim or interest of such class, the plan—(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest …." 11 U.S.C. § 1124.

**2.1     Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses under section 503(b) of the Bankruptcy Code and Priority Tax Claims under section under section 507(a)(8) of the Bankruptcy Code are not classified. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following claims in any class:

**A.     Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the administrative claimant or Court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

4

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Debtor's counsel fees and expenses | $50,000 | Payment through the Plan as follows: Following application and allowance by the Bankruptcy Court as appropriate, paid in full on or as soon as practicable after the later of allowance and the Effective Date. |
| Other estate professional fees: Lain Faulkner & Company, Financial Advisor | $25,000 | Payment through the Plan as follows: Following application and allowance by the Bankruptcy Court as appropriate, paid in full on or as soon as practicable after the later of allowance and the Effective Date. |
| Subchapter V Trustee | $5,000 | Payment through the Plan as follows: Following application and allowance by the Bankruptcy Court as appropriate, paid in full on or as soon as practicable after the later of allowance and the Effective Date. |
| **TOTAL** | **$80,000** | |

B.   **Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.  Here, the Plan proposed to pay Priority Tax Claims in full immediately.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Pampa ISD | $2,367.81 | January 1, 2025 | Paid in full on or as soon as practicable after Effective Date. |
| Roberts County | $17,371.85 | January 1, 2025 | Paid in full on or as soon as practicable after Effective Date. |

5

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Panhandle Ground Water Conservation District | $163.82 | January 1, 2025 | Paid in full on or as soon as practicable after Effective Date. |
| Miami ISD | $22,716.26 | January 1, 2025 | Paid in full on or as soon as practicable after Effective Date. |
| **TOTAL** | **$42,619.74** | | |

**2.2** **Classes of Claims and Equity Interests.**

The following are the classes of claims set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A.** **Classes of Secured Claims**

Allowed secured claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing the Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: MBP Roberts County, LLC<br><br>Collateral description: Oil and gas interests in Roberts County, TX described in more detail in the Deed of Trust<br><br>Allowed Secured Amount: $1,501,422.00 (as of August 8, 2025) | No | Impaired | Allowed secured claim will be paid in full, with interest at the prepetition nondefault contract rate, paid in 60 monthly installments, beginning on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter for 59 months.<br><br>In the event of a sale of MBP Roberts County, LLC's collateral, MBP Roberts County, LLC will have the right to credit bid |

| | | | the full unpaid amount of its allowed secured claim and will otherwise be paid in full from the sale proceeds. No sale will be permitted that does not result in the full repayment of MBP Roberts County, LLC's allowed secured claim without its consent. |
|---|---|---|---|

**B. Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| None | | | |

**C. Classes of Unsecured Non-Priority Claims**

Unsecured non-priority claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. A table of all unsecured trade claims and general unsecured claim claims, their estimated amounts, whether the claim is allowed or disputed, and their anticipated distribution under the Plan is attached hereto as **Exhibit B**.

The following chart identifies the Plan's proposed treatment of unsecured non-priority classes, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | Unsecured Trade Claims | Impaired | Allowed unsecured trade claims will be paid in full, with interest at the prime rate in effect on the Effective Date, in six (6) equal monthly installment payments starting on the first day of the first full month following the Effective Date. In the event of a sale of |

7

| Class # | Names & Description | Impairment | Treatment |
|---|---|---|---|
| | | | substantially all the Debtor's assets, allowed unsecured claims will be paid in full from any sale proceeds remaining after the satisfaction of claims in senior classes. |
| 3 | General Unsecured Claims | Impaired | Allowed general unsecured claims will be paid in full, with interest at the prime rate in effect on the Effective Date, in sixty (60) equal monthly installment payments starting on the first day of the first full month following the Effective Date |
| 4 | Suspended Royalty Claims | Unimpaired | Allowed claims for royalties being held in suspense by the Debtor will be paid in full in cash as and when the contingencies which resulted in suspension are resolved. |

D.  **Class of Equity Interest Holders.**

Equity Interest holders are parties who hold an ownership interest (*i.e.*, and "Equity Interest") in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company, the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder. The following chart sets forth the Plan's proposed treatment of the classes of Equity Interest holders:

| Class # | Names & Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Blue Duck Energy, Ltd. | Impaired | Blue Duck shall retain its Equity Interests in the Debtor; *provided*, *however*, that only Jason Rae in his capacity as chapter 11 trustee of Blue Duck shall have authority to exercise control over such Equity Interests unless and until the Bankruptcy Court orders otherwise. |

8

**2.3** **Plan Payment Defaults.**

In accordance with § 1191(c)(3)(B)(ii) of the Code, if the Debtor does not make any payment as and when required under the Plan, any holder of a claim or interests that did not receive such payment may seek appropriate relief from the Bankruptcy Court, including modification of the Plan, on at least ten (10) business days' notice to the Debtor, during which ten (10) day period the Debtor shall have the opportunity to cure such default.

**2.4** **Claims Allowance Process.**

Any Claim detailed on the Debtor's schedules for which the Debtor did not select disputed, unliquidated, or contingent is deemed an allowed claim under this Plan. For all other claims, the creditor must file a proof of claim by the Bar Date in order to receive a distribution under the Plan. The Debtor may extend the Bar Date for any creditor by written consent (email being sufficient).

The Debtor may object to the amount or validity of any claim within sixty (60) days of the Effective Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the claim. The claim objected to will be treated as a disputed claim under the Plan.

No partial distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or Final Order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Disbursing Agent subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to the Debtor or allowed claim holders, as applicable, within the next payment period in accordance with this Plan.

**2.5** **Treatment of Executory Contracts and Unexpired Leases.**

Except for the executory contracts and unexpired leases that have been expressly rejected herein or pursuant to a prior Court order, the Debtor will be conclusively deemed to have assumed all executory contracts and unexpired leases as of the Effective Date.

**A proof of claim arising from the rejection of an executory contract or unexpired lease must be filed no later than thirty (30) days after the date of the Confirmation Order.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

**2.6** **Means for Implementation of the Plan.**

Payments required to be made under this Plan will be funded by cash on hand and revenue generated by the Debtor's continued business operations. The Debtor has provided projected financial information as **Exhibit A**. The Debtor also reserves the right to sell all or any portion of its assets following confirmation of this Plan. The Debtor may, but shall not be required to, seek Court approval of any such sale under 11 U.S.C. § 363.

**2.7** **Payments by Disbursing Agent.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor.

If the Plan is confirmed under section § 1191(b), the Debtor will act as the Disbursing Agent. There is cause to have the Debtor serve as the Disbursing Agent, instead of the Sub V Trustee, because (1) the Debtor will remain under the control of an independent third party fiduciary—*i.e.*, Jason Rae in his capacity as chapter 11 trustee of Blue Duck and CRO of the Debtor—until the litigation concerning Blue Duck's ownership is resolved; and (2) the Debtor utilizes an independent third party contract bookkeeper who handles all the Debtor's accounts payable and recordkeeping.

**2.8** **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Jason Rae, CRO | Chief Restructuring Officer | $525/hour |

**2.9** **Tax Consequences of the Plan.**

CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under or pursuant to the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. All state or local government officials and agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**2.10** **Winding up the Debtor**

In the event the Debtor sells substantially all its assets and pays all allowed claims in full, then the Debtor may elect to wind up under the applicable provisions of the Texas Business Organizations Code.

## ARTICLE 3
## DISCHARGE AND PLAN INJUNCTION

**3.1** **Discharge**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(i) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the Court; or

(ii) if applicable, of the kind specified in section 523(a) of this title.

**3.2.** **Injunction**

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, from and after the Effective Date, all entities who hold or may hold prepetition claims or interests against the Debtor and all entities acting on behalf of such holders are permanently enjoined from taking any of the following actions against the Debtor:**

(i) **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any prepetition claims or interests;**

(ii) **enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor on account of or in connection with or with respect to any prepetition claims or interests;**

(iii) **creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property on account of or in connection with or with respect to any prepetition claims or interests;**

(iv) **asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the property of the Debtor on account of or in connection with or with respect to any prepetition claims or**

**interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date;**

(v) **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any prepetition claims or interests discharged under this Plan.**

## ARTICLE 4
## GENERAL PROVISIONS.

**4.1** **Vesting of Property of the Estate.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor; and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor; *provided*, *however,* that the Noteholder will retain its prepetition lien under the Deed of Trust.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the estate.

**4.2** **Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**4.3** **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**4.4** **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii) to rule on any modification of the Plan proposed under section 1193;

(iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases,

(v) to exercise jurisdiction consistent with the Bankruptcy Code; and

(vi) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

## 4.5 Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 4.6 Preservation of Causes of Action.

All claims and Causes of Action that existed prior to confirmation of the Plan are hereby preserved for the benefit of the Litigation Truwst post-confirmation, including, but not limited to:

(i) all claims and Causes of Action the Debtor could assert in connection with the allegations in *JetTexas Oil, LLC et al. v. Stewart Hoge et al.*, Adv. No. 24-02006 (Bankr. N.D. Tex.);

(ii) all claims and Causes of Action the Debtor may have against the individuals and entities named as parties in *JetTexas Oil, LLC et al. v. Stewart Hoge et al.*, Adv. No. 24-02006 (Bankr. N.D. Tex.), including, but not limited to, claims and causes of action under chapter 5 of the Bankruptcy Code; and

(iii) all claims and Causes of Action against any entity identified in the Debtor's schedules and statement of financial affairs, including, but not limited to, claims and causes of action under chapter 5 of the Bankruptcy Code.

## ARTICLE 5
## DEFINITIONS AND
## RULES OF CONSTRUCTION

**5.1 Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. Terms not defined in § 101 of the Code but defined or otherwise given meaning elsewhere in the Code or the Federal Rules of Bankruptcy Procedure shall have those definitions and meanings.

**5.2 Additional Definitions.** The following capitalized terms shall be defined as follows when used in this Plan:

(i) "Administrative Expense" means a claim of the type described in section 503(b) of the Bankruptcy Code.

(ii) "Bankruptcy Code" is defined in § 1.5 of this Plan.

(iii) "Bankruptcy Court" mans the United States Bankruptcy Court for the Southern District of Texas.

(iv) "Bar Date" means: (a) August 11, 2025 for creditors other than governmental units; and (b) December 1, 2025 for governmental units.

(v) "Blue Duck" is defined in § 1.2 of this Plan.

(vi) "Blue Duck Case" is define in § 1.4 of this Plan.

(vii) "Causes of Action" means all actions, causes of action (including avoidance actions), claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the petition date or during the course of this chapter 11 case, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to claims; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or federal law fraudulent transfer claim.

(viii) "Code" is defined in § 1.5 of this Plan.

(ix) "Confirmation Date" means the date the Court enters the Confirmation Order.

(x) "Confirmation Order" means an order entered by the Bankruptcy Court confirming this Plan under the applicable provisions of the Bankruptcy Code.

(xi) "Court" means the Bankruptcy Court.

(xii) "Debtor" means Blue Duck Energy MVR, LLC.

(xiii) "Deed of Trust" is defined in § 1.4 of this Plan.

(xiv) "Disbursing Agent" means the Debtor.

(xv) "Effective Date" means the first business day after the Confirmation Date.

(xvi) "Equity Interest" is defined in § 2.2D of this Plan.

(xvii) "Final Order" means an order as to which (a) the time to appeal has expired and no appeal has been taken; or (b) in the event an appeal is taken, the court(s) of appeals have affirmed the order in full, no further appeal has been taken, and the time to appeal further or seek rehearing en banc has expired.

(xviii) "MVR Company Agreement" is defined in § 1.2 of this Plan.

(xix) "Note" is defined in § 1.4 of this Plan.

(xx) "Noteholder" is defined in § 1.4 of this Plan.

(xxi) "Plan" means this Small Business Debtor's Plan.

(xxii) "Priority Tax Claim" means a claim of the type described in section 507(a)(8) of the Bankruptcy Code.

(xxiii) "Sub V Trustee" means Katharine B. Clark, in her capacity as trustee under section 1183 of the Bankruptcy Code.

Respectfully submitted this 2nd day of September, 2025.

BLUE DUCK ENERGY MVR, LLC

By: /s/ *Jason Rae*
Jason Rae, Chief Restructuring Officer

MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ *Julian P. Vasek*
Thomas D. Berghman
Texas Bar No. 24082683
Julian P. Vasek
Texas Bar No. 24070790
James K. "Kyle" Jaksa
Texas Bar No. 24120923
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone: (214) 855-7500
E-mail: tberghman@munsch.com
E-mail: jvasek@munsch.com
E-mail: kjaksa@munsch.com

**Counsel to Blue Duck Energy MVR, LLC**

**Blue Duck Energy MVR, LLC**
**Plan Projections**
**Exhibit A**

| | | |
|---|---|---:|
| **Projected Cash Balance on Effective Date (1)** | $ | 1,217,030 |
| | | |
| **Projected Cash Inflows:** | | |
| Net Revenues from Well Operations (2) | $ | 2,888,175 |
| **Total Projected Cash Inflows** | $ | 2,888,175 |
| | | |
| **Projected Cash Outflows:** | | |
| Administrative Claims | $ | 180,000 |
| Priority Tax Claims | $ | 42,620 |
| Secured Claim (3) | $ | 1,786,620 |
| Priority Unsecured Claims | $ | 40,655 |
| Unsecured Trade Claims | $ | 73,125 |
| General Unsecured Claims | $ | - |
| Suspended Royalty Claims | $ | 154,357 |
| **Total Projected Cash Outflows** | $ | 2,277,376 |
| | | |
| **Net Cash Flow** | $ | 610,799 |
| | | |
| **Projected Ending Cash Balance (4)** | $ | 1,827,829 |

**NOTES:**
(1) Assumes Effective Date of November 30, 2025.
(2) Assumes well operations through December 31, 2030 based upon the Certero Consultants, LLC report as of May 1, 2025.
(3) Assumes 60 monthly payments at 5% contract interest rate.
(4) Amount projected to be available for Equity Interests.

**Exhibit B**

**Summary of Unsecured Trade Claims**

| Creditor | Amount | Allowed/Disputed | Est. Distribution |
|---|---:|:---:|:---:|
| Internal Revenue Service Special Procedures – Insolvency | $0.00 | Allowed | 100% |
| State Comptroller of Public Accounts | $40,654.77 | Allowed | 100% |
| 3rd Alliance Industrial Engine Service | $3,122.18 | Allowed | 100% |
| Chemical Weed Control, Inc. | $1,299.00 | Allowed | 100% |
| Dick Grant | $203.89 | Allowed | 100% |
| Great Plains Gas Compression Lockbox | $21,300.00 | Allowed | 100% |
| Jet Well Solutions | $3,633.21 | Allowed | 100% |
| O&B Tank Co Inc. | $25,071.33 | Allowed | 100% |
| Unbridled Resources LLC | $18,079.43 | Allowed | 100% |
| Waldrop's Engine Service Co., Inc. | $415.73 | Allowed | 100% |

**Summary of General Unsecured Claims**

| Creditor | Amount | Allowed/Disputed | Est. Distribution |
|---|---:|:---:|:---:|
| Garrett Johnson | Unliquidated | Disputed | 100% |
| JetTexas Oil, LLC | Unliquidated | Disputed | 100% |
| Stewart Hoge | $600,000.00 | Disputed | 100% |